**In re EDGAR B, INC., d/b/a Edgar B Furniture, f/k/a Broyhill, Inc., d/b/a JEB Advertising, Debtor.**

No. 2:96CV00557.

United States District Court, M.D. North Carolina.

Aug. 30, 1996.

Gail C. Arnee, Burns, Price & Arnee, L.L.P., Winston–Salem, NC, for Appellant.

## MEMORANDUM OPINION

BEATY, District Judge.

This matter is before the Court pursuant to an appeal by the Trustee in bankruptcy from an Order entered by the United States Bankruptcy Court for the Middle District of North Carolina which read into Title 11 U.S.C. § 507(a)(4) an additional limitation on the priority established by Congress for claims related to employee benefit plans.

This Court has jurisdiction of this appeal based upon 28 U.S.C. § 158(a)(1), and to the extent that the appeal addresses conclusions of law reached by the Bankruptcy Court, this Court is authorized to subject the decision to a *de novo* standard of review. For the reasons stated herein, it is the opinion of this Court that the May 30, 1996 Order entered by the United States Bankruptcy Court for the Middle District of North Carolina is hereby reversed.

## I. Facts

The uncontested facts reveal that Edgar B, Inc., d/b/a Edgar B Furniture, f/k/a Broyhill, Inc., d/b/a JEB Advertising ("the Debtor") filed a Chapter 7 Bankruptcy proceeding on October 20, 1995. W. Joseph Burns ("the Trustee") was appointed Trustee for the Estate. On April 16, 1996, Southern Group Administrators ("SGA") filed a proof of claim on behalf of the Broyhill, Inc. Employee Benefit Plan ("the Plan") for medical services provided to the Debtor's employees. There is no dispute that the Plan is the type of employee benefit plan described in the priority scheme established by Congress as a part of 11 U.S.C. § 507(a)(4)of the Bankruptcy Code.

The Plan in this case provided medical services to sixty-six employees as a part of the Debtor's employee benefit package. The disputed proof of claim filed with the Trustee by SGA sought a total payment as amended in the amount of $34,045.27. A portion of the total sum .in the amount of $3,404.00 was claimed as a priority pursuant to § 507(a)(1) for the costs administering payments of medical claims of employees of the Debtor. This full amount was allowed by the Bankruptcy Court without objection.

The item in dispute involves the remaining sum of $30,641.27 which represents pre-petition claims for reimbursement to health care providers for medical services to the Debtor's employees. The total sum of the claims filed against the Plan is less than the aggregate amount of employee benefits available based upon a calculation pursuant to § 507(a)(4). However, at issue in this appeal is the claims of two individual employees each of which is in excess of $4,000.00. These two claims give rise to the Bankruptcy Court's creation of a new limitation on the priority of § 507(a)(4) employee benefit plans.

This matter came before the Bankruptcy Court based on a motion filed by the Trustee on May 8, 1996 for authorization to pay the full employee benefit claims in the amount of $34,045.27. On May 17, 1996, the Bankruptcy Court entered an Order authorizing partial payment of the claim filed on behalf of the Plan by SGA. In applying § 507(a)(4) of the Code, the Bankruptcy Court in paragraph 4 noted that:

Section 507(a)(4) sets out a formula for the allowable amount which might be paid for contributions to employee benefit plans. This formula requires that such

amount be calculated by multiplying the number of employees covered by each plan by $4,000. The Edgar B, Inc. plan consists of sixty-six (66) covered employees, and thus the potential amount allowable under the terms of § 507(a)(4) is $264,-000.00. This subsection also requires that the potential maximum allowance be reduced by the dollar amount paid out in employee wage claims. In this case, allowable employee wage claims will be in an amount no greater than $15,000.00. Thus the revised maximum amount payable under § 507(a)(4) is approximately $249,-000.00.

(Bankr.Ct. Order May 17, 1996.)[1] The Bankruptcy Court arrived at this result by an application of the plain language of the statute. However, the May 17, 1996 Order further indicated that:

> 5. It is in the best interests of the Debtor's estate and its creditors that the Trustee be authorized to pay Southern Group Administrators, Inc. for reimbursement of health benefits provided to Edgar B, Inc. employees, to the extent that the amount paid on behalf of any individual employee, when added to sums paid to that employee under § 507(a)(3) does not exceed a total of $4,000.00.

> 6. To the extent that any reimbursement claims included in the Southern Group Administrators, Inc. claim on behalf of the Broyhill, Inc. Employee Benefit Plan remain unpaid following payments limited as set out in the preceding paragraph, this Court will issue a further opinion as to whether such additional amounts are to be considered as priority claims payable in accordance with § 507(a)(4), or as general unsecured claims.

Consistent with paragraph six (6), the Bankruptcy Court entered an Opinion and Order on May 30, 1996, which further concluded that:

> When this court considers the grand scheme of the bankruptcy Code in conjunction with the legislative history surrounding the enactment of § 507(a)(4), this court can arrive at only one conclusion: Employee benefits priority is below the wage priority and is subject to the dollar limit based on an employee's actual distribution under the wage priority. Accordingly, no employee may receive priority in excess of $4,000 for wages and employee benefits.

(Bankr.Ct. Order May 30, 1996 at ¶ 6.) This additional limitation on the priority for employee benefit plans, indicating that any payment on behalf of an individual employee may not exceed $4,000.00, serves as the basis of the Trustee's appeal. This Court does not agree that such a limitation is warranted by the language of § 507(a)(4), therefore the Bankruptcy Court's Order of May 30, 1996 is hereby reversed.

## II. DISCUSSION

It is axiomatic that the starting point in every case involving construction of a statute is the language itself. *Landreth Timber Co. v. Landreth,* 471 U.S. 681, 685, 105 S.Ct. 2297, 2301, 85 L.Ed.2d 692 (1985). The task of resolving the dispute over the meaning of a statute begins where all such inquiries must begin: with the language of the statute itself. "In this case it is also where the inquiry should end, for where, as here, the statute's language is plain, 'the sole function of the courts is to enforce it according to its terms.'" *U.S. v. Ron Pair Enter., Inc.* 489 U.S. 235, 241, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989) (citations omitted). Where the language clearly expresses Congress' intent "reference to legislative history and to pre-Code practice is hardly necessary." *Id.*

It is Congress' prerogative to assign priorities, and in doing so it enacted § 507 of Title 11 of the United States Code which provides the following:

> (a) The following expenses and claims have priority in the following order ...

> 4. Fourth, allowed unsecured claims for contributions to employee benefit plan—

---

1. Section 507(a)(4) also requires a reduction in this sum based upon "the aggregate amount paid by the estate on behalf of such employees to any other employee benefit plan." This was not necessary in this instance since there were no other payments made requiring a reduction in the aggregate sum available to cover claims payable under this priority level.

(A) arising from services rendered within 180 days before the date of the filing of the petition or the date of the cessation of the debtor's business, whichever occurs first; but only

(B) for each such plan, to the extent of—

(i) the number of employees covered by each such plan multiplied by $4,000; less

(ii) the aggregate amount paid to such employees under paragraph (3) of this subsection, plus the aggregate amount paid by the estate on behalf of such employees to any other employee benefit plan.

 To the extent that Congress has created this priority, a Bankruptcy Court may not set up subclassification of priorities within a statutory class according to its theory of equity. *In re Keystone Realty Holding Co.*, 117 F.2d 1003, 1006 (3d Cir.1941). Although bankruptcy proceedings are purely equitable in character and are to be administered within sound principles of equity, "these equitable powers are to be exercised within the limits laid down by the Bankruptcy Act and subject to its specific provisions." *Id.* This means that a "court may not by granting a priority which it deems equitable set aside the clear congressional mandate that no such priority shall be accorded." *Id.* Congress' goal of enacting of § 507(a)(4) was to protect workers' benefit plans. As originally stated by the First Circuit, "allowing 'the insurer to obtain its premiums through the priority would seem the surest way to protect the employees with the policy benefits to which they are entitled.'" *Employers Ins. of Wausau v. Plaid Pantries, Inc.*, 10 F.3d 605, 607 (9th Cir.1993) (quoting *In re Saco Local Dev. Corp.*, 711 F.2d 441, 449 (1st Cir.1983)). The Ninth Circuit, in quoting *In re Saco Local Dev. Corp.*, further noted that "the purpose of the priority was to protect the solvency of benefit plans." *Id.*

Based upon the plain language of the statute, allowance of a § 507(a)(4) claim will require nothing more than a simple mathematical computation. *In re Chateaugay Corp.*, 115 B.R. 760, 785 (Bankr.S.D.N.Y.1990), *aff'd on other grounds*, 944 F.2d 997 (2d Cir.1991). Other courts have also noted that "the only impediment to fixing the amount of the claim entitled to the § 507(a)(4) priority is the need to determine the extent of any valid § 507(a)(3) wage priority claims. Once the § 507(a)(3) determination is made, setting the § 507(a)(4) figure will be purely mechanical." *In re Saco Local Dev. Corp.*, 711 F.2d at 446.

A practical application of the formula was illustrated in the case of *In re P.C. White Truck Line, Inc.*, 22 B.R. 540, 541 (Bankr. M.D.Ala.1982).[2] The Court in *P.C. White Truck* noted that this priority section is about a limitation upon the amount which may be paid to employee benefit plans. The only limitations upon the application of the priority are as set out in the statute itself.

The limitations are:

1. One hundred eighty days before the filing of the petition;

2. The number of employees covered by such plan multiplied by 2000.

Adjustments are then made to the second condition above, by reducing it by the amount of priority wage claims paid under paragraph (3) of the priority section. It is further reduced by "the aggregate amount paid by the estate on behalf of such employees to any other employee benefit

---

**2.** The forty-seven employees of P.C. White Truck Line were multiplied by $2,000.00 for a gross aggregate limitation of $94,000 for the employee benefit plan. Of the forty-seven employees only eleven were paid an aggregate of $9,289.94 under one of the plans pursuant to § 507(a)(3). Funds were subject to being paid for two other employee benefit plans in the amount of $9581 for the Health and Welfare Fund and $11,726 for the Pension Fund. Illustrating only the aggregate sum available for the Health Plan, the court indicated that "[I]f the amount to be paid from the estate as a priority claim under the Pension Plan ($11,726) for these eleven employees is add-

ed to the $9,289.94 (the § 507(a)(3) sum), deductible from the limitation in the Health and Welfare Plan, the sum of $21,015.94 is realized, which subtracted from the $94,000 gross limitation, leaves a net limitation of $72,984.06. The Health and Welfare priority claim is $40,698.20, which is not in excess of $72,984.06, and is therefore due to be allowed in full as a priority claim." *P.C. White Truck Line*, 22 B.R. at 541. The same illustration was made for the Pension Fund gross limitation less deductions resulting in a priority claim that did not exceed the gross limitation available.

plan." This section 507(a)(4) is also tied to aggregating amounts. It is not tied to the individual employees in the amounts paid them. It is a grossing out limitation. *Id.*[3]

■ In the May 30, 1996 Order, the Bankruptcy Court seems to acknowledge that the plain language of § 507(a)(4) does simply require a mathematical calculation.[4] In two sections of the Order, the Bankruptcy Court indicated an understanding of the effect of the plain language of the statute, but proceeded to reject the results reached from a calculation based upon the § 507(a)(4) formula. In doing so, the Bankruptcy Court relied on an earlier opinion of the Chief Judge of the Bankruptcy Court for the Middle District of North Carolina in the case of *In Re The Montaldo Corporation*, No. B–95–10416C–11G (August 9, 1995) which rejected the mathematical application of § 507(a)(4) as not being the result Congress intended.[5]

The starting point for the Chief Judge in the *Montaldo* opinion is that the language of the statute is "less than clear" so that the Chief Judge immediately proceeded to an examination of the statute's legislative history. *Id.* at 2. The issue ultimately decided by the Chief Judge was whether there is a limitation of the employee benefit plan priority based upon the amount that an individual employee receives as a § 507(a)(3) priority. The Chief Judge acknowledged that the plain language of "[s]ection 507(a)(4) does not contain any clear explicit limitation upon priority payments to individual employees." *Id.* at 4. As indicated earlier such an observation should end the inquiry by the court based upon the plain language of the statute and its simple mathematical application. However, the Chief Judge's ruling in *Montaldo* continued by indicating that "[n]evertheless, the court believes that the amount which may be given priority in this case under Section 507(a)(4) may not be determined without also giving effect to the $4,000.00 per employee limitation contained in Section 507(a)(3)." *Id.* In effect, the Chief Judge created a limitation in the form of a sub-classification which admittedly does not appear within the language of § 507(a)(4).

The present Order before the Court, in relying on the *Montaldo* opinion, reaches the same result. The ultimate ruling in both opinions is that there is only one priority created when §§ 507(a)(4) and 507(a)(3) are considered together. The net effect of which is to hold that if the entire $4,000.00 wage priority is paid to an individual employee in applying the § 507(a)(3), then that same individual employee would not be entitled to any benefits from a § 507(a)(4) employee benefit plan because he had claimed his full wage priority. If Congress had intended this result, there would have been no need for § 507(a)(4) because Congress would have created a priority in name only without providing for a monetary benefit.

Even if the language of § 507(a)(4) was ambiguous, which this Court holds that it is

---

**3.** The amount has been amended to $4,000.00 since the filing of the *P.C. White Truck Line* case.

**4.** In the eyes of the Trustee, the language of § 507(a)(4) could not be more clear. To arrive at the total amount that may be accorded priority status under the statute one simply multiplies the number of employees covered by the plan (in this case 66) by $4,000 and then subtract any amounts paid to those employees under § 507(3) (in this case approximately $15,000) plus any monies paid on their behalf to any other employee benefits plan (in this case zero). Using this approach, the Trustee contends that § 507(a)(4) accords priority treatment for $259,000 ( [66 × $4,000] − $15,-000) worth of medical claims under the health benefits plan. Because the medical claims in this case total only $34,045.27, the Trustee believes all the claims should be afforded priority treatment.

*Focusing on the plain language of the statute, the position espoused by the Trustee seems quite compelling.* (emphasis added) However, an examination of the legislative history and relevant case law demonstrate that the Trustee's proposal is not the intended result.
(Bankr.Ct. Order May 30, 1996 at 3, 4.)
As the *Montaldo* decision demonstrates, *aside from the basic plain language of the statute,* everything about § 507(a)(4) seems to imply that the statute was intended to limit employee benefits priority to $4,000 per employee. (emphasis added)
(Bankr.Ct. Order May 30, 1996 at 5.)

**5.** Even though the *Montaldo* decision is not directly before this Court for review, the Court is compelled to discuss it since the opinion and order presently on appeal bases it holding substantially on the findings and conclusions of the Chief Judge in *Montaldo*.

not, thereby justifying a consideration of the legislative history, the Court would interpret differently the statement relied upon by the Chief Judge to support his conclusion. The cited reference to legislative history provides that "the priority is limited to the unused amount of the wage priority." (*Montaldo* at 5.) It is the opinion of this Court that this statement does not refer to the wages paid to an individual employee under § 507(a)(3). But, rather it refers to the determination of the aggregate amount available for payment of claims filed against the employee benefit plan. This would mean that once the § 507(a)(4) formula is used to calculate the gross amount available for all claims filed against the employee benefit plan, then the actual amount paid pursuant to § 507(a)(3) is deducted from the gross amount available. Using this calculation alone would result in the "unused amount of the wage priority" which is referred to in the legislative history. Even this amount is still subject to further reductions based upon potential payments to other employee benefit plans.

As indicated in the *P.C. White Truck* case, § 507(a)(4) is tied to aggregating amounts and is not tied to the individual employees based upon the amounts paid to them. The Bankruptcy Court's May 30, 1996 Order holds in essence that § 507(a)(4) is tied to and limited by what an individual employee has received pursuant to the § 507(a)(3) priority. In the instant case, the Bankruptcy Court attempts to modify the Congressional priority scheme in a way that Congress itself did not do. If Congress had wanted to add a $4,000.00 per employee limit to § 507(a)(4) it very easily could have, especially since there was no hesitation to do so in § 507(3) and in § 507(5).[6]

The Bankruptcy Court in its Order of May 30, 1996 goes further to express an equitable concern that the operation of the plain language of § 507(a)(4) would "create the potential for a single employee to deplete a bankruptcy estate of all of its unencumbered assets, leaving all other unsecured creditors without any recovery whatever." This same result could occur at any point during the operation of the priority scheme created by Congress. The facts may be such that the estate funds may not be sufficient to even reach § 507(a)(4) because of the size of claims which are entitled to priority at a higher level. "It is even conceivable that if a large enough wage claim is recognized under § 507(a)(3), none of" the claims "would be entitled to the § 507(a)(4) priority and the current dispute would become moot." *In re Saco Local Dev. Corp.*, 711 F.2d at 446. However, the equity concern of the Bankruptcy Court is not sufficient to overrule the plain language of § 507(a)(4) which creates a priority for an aggregate amount for payment of claims filed against an employee benefit plan. Once an aggregate amount is determined, it is limited only by the reductions set out in § 507(a)(4)(B)(ii). The Court, therefore, holds that a calculation of the aggregate amount available for payment of employee benefit plan claims is not further limited by the $4,000.00 wage priority which may be available to individual employees pursuant to § 507(a)(3). The Court further holds that to the extent that an individual employee has a claim for the maximum wage priority pursuant to § 507(a)(3), the payment of any amount to that individual employee does not serve as a further limitation of any claim that the individual employee may have for employee benefits pursuant to § 507(a)(4). Therefore, the Bankruptcy Court's May 30, 1996 Order holding that "no employee may receive priority in excess of $4,000 for wages and employee benefits" is REVERSED to the extent that the Order seeks to impose the $4,000.00 limitation within § 507(a)(3) as a further limitation on the benefits an individual employee may claim as a priority pursuant to a § 507(a)(4) employee benefit plan.

IT IS HEREBY ORDERED THAT the May 30, 1996 Order of the Bankruptcy Court is REVERSED.

---

6. Given the present status of § 507(a)(4), any limitation on individual claims would have to be established by the administrator within the employee benefit plan unless Congress directs otherwise.