## In re NEW ENGLAND CARTAGE CORP., Debtor.

### Bankruptcy No. 95–14807–CJK.

United States Bankruptcy Court, D. Massachusetts.

May 11, 1998.

Renee J. Bushey, Providence, RI, for Debtor.

John O. Desmond, Framingham, MA, Chapter 7 Trustee.

## *MEMORANDUM OF DECISION ON TRUSTEE'S OBJECTIONS TO CLAIMS OF PENSION AND HWI FUNDS*

CAROL J. KENNER, Chief Judge.

This memorandum addresses the issue of whether, in calculating the portion of a claim for provision of employee benefits that is entitled to priority under 11 U.S.C. § 507(a)(4), the statute should be construed as imposing a cap of $4,000 on the total that can be allowed under priorities three and four (§ 507(a)(3) and (4)) for any given employee. For the reasons set forth below, I hold that, in § 507(a)(4), the $4,000 cap is an aggregate limitation and does not limit the amount allowable on account of a specific employee.

The New England Teamsters Trucking Industry Pension Fund (the "Pension Fund") has filed a proof of claim in the amount of $90,762.33, of which the Pension Fund claims $9,200.77 is entitled to priority under 11 U.S.C. § 507(a)(4). Likewise, the Teamsters Local Union 653 Health, Welfare & Insurance Fund (the "HWI Fund") has filed a

proof of claim in the amount of $66,987.84, of which the HWI Fund contends that $33,-450.05 is entitled to priority under § 507(a)(4). The Chapter 7 Trustee has objected to both claims, arguing that the Funds have overstated the portions thereof that are entitled to priority. He contends that, properly applied, § 507(a)(4) would accord priority treatment to only $8,282.52 of the Pension Fund claim and only $31,873.38 of the HWI Fund claim. The parties agree that the portion of each claim that is not entitled to priority shall be allowed as a general unsecured claim.

They disagree only on the calculation of the amount entitled to priority. According to the Trustee, § 507(a)(4)[1] should be construed as imposing a $4,000 cap on the total that can be allowed under priorities (3) and (4) for any given employee. The Funds disagree, arguing that, by its express language, § 507(a)(4) caps only the amount payable per plan, not per covered employee. According to the Funds, the statute is clear and should be applied as written, without interpolating any limit not expressly set forth in it.

The Funds have the better of this argument. Section 507(a)(4)(B) is an aggregate limitation. It limits the total claims that can be paid under fourth priority, not the amount that can be paid to or on account of an individual employee. Moreover, the cap is defined according to aggregate amounts: "(i) the number of employees covered by each such plan multiplied by $4,000; less (ii) the aggregate amount paid to such employees under paragraph (3) of this subsection, plus the aggregate amount paid by the estate on behalf of such employees to any other employee benefit plan." 11 U.S.C. § 507(a)(4)(B). In both respects, § 507(a)(4) very clearly departs from the *per individual* limitations that are expressly employed in parts (3) and (5) of § 507(a). In view of the contrast between these subsections, I must assume that the departure was intentional. Section 507(a)(4) is clear as written, not ambiguous on this point; it gives no cause to look behind the statute to legislative history or intent.[2] Therefore, I will overrule the Trustee's objection and allow the priority claims as calculated without a cap on the wages and benefits payable on account of each employee.[3] Accordingly, the claim of the Pension Fund will be allowed as a fourth priority claim in the amount of $9,200.77 and a nonpriority unsecured claim in the amount of $81,561.56; and the claim of the HWI Fund will be allowed as a fourth priority claim in the amount of $33,450.05 and a nonpriority unsecured claim in the amount of $33,537.79.

---

**1.** Section 507(a)(4) states:
   (a) The following expenses and claims have priority in the following order:
      (4) Fourth, allowed unsecured claims for contributions to an employee benefit plan—
      (A) arising from services rendered within 180 days before the date of the filing of the petition or the date of the cessation of the debtor's business, whichever occurs first; but only
      (B) for each such plan, to the extent of—
         (i) the number of employees covered by each such plan multiplied by $4,000; less
         (ii) the aggregate amount paid to such employees under paragraph (3) of this subsection, plus the aggregate amount paid by the estate on behalf of such employees to any other employee benefit plan.

**2.** In any case, I do not read the legislative history as demonstrating a contrary intent. At best, the history might be ambiguous on this issue. The statute speaks far more clearly of the legislative intent than anything to the contrary in the legislative history.

**3.** *Matter of C & S Cartage & Leasing Company,* 204 B.R. 565, 566 (Bankr.D.Neb.1996) (the $4,000 per employee limitation of § 507(a)(3) is not a further limitation on a claim for employee benefits under § 507(a)(4)); *In re Edgar B, Inc.,* 200 B.R. 119 (M.D.N.C.1996) (reversing bankruptcy court order that imposed $4,000 limitation on wages and benefits payable on account of any individual employee); *In re P.C. White Truck Line, Inc.,* 22 B.R. 540, 541 (Bankr.M.D.Ala. 1982) ("[S]ection 507(a)(4) is also tied to aggregating amounts, not to individual employees in the amounts paid them. It is a grossing out limitation."); 4 Lawrence King *et al.,* COLLIER ON BANKRUPTCY, ¶ 507.06[4][b] (15th ed. 1998) ("In calculating the maximum amount of the priority, the calculation is to be done on the basis of the full number of employees covered by the plan, regardless of the particular amount of benefits allocatable to any individual.").