### In the Matter of UNIMET CORPORATION, Debtor.

### Bankruptcy No. 685–00240.

United States Bankruptcy Court,
N.D. Ohio.

June 14, 1988.

On Motion for Reconsideration
May 26, 1989.

See also, Bkrtcy., 85 B.R. 450.

Jeffrey T. Heintz of Brouse & McDowell, Akron, Ohio, for trust.

Gregg P. Hirsch, New York City, for Metropolitan Life Ins. Co.

## MEMORANDUM OF DECISION

JAMES H. WILLIAMS, Chief Judge.

Presently before the court is an objection filed by the Official Committee of Unsecured Creditors[1] to the proof of claim of Metropolitan Life Insurance Co. (Metropolitan). Metropolitan and the Trustee met informally and exchanged documentation in an attempt to resolve the objection. Unfortunately, no resolution was forthcoming and a pre-trial conference was held before the court at which the parties agreed that the threshold issue, the number of employees to be included in Metropolitan's claim, would be submitted to the court upon stipulations of fact and briefs.

## FACTS

From November 15, 1979 through February 28, 1985, Metropolitan, through a contract with Unimet Corporation (Unimet), provided employee benefits to employees of Unimet, Esmet, Inc., Intech Systems, Inc. (Intech), both subsidiaries of Unimet, and Cordex, a division of Unimet. (Collectively, the Unimet plan).

The nature of the benefits offered to the employees under the Unimet plan varied

1. Pursuant to the Joint Plan of Reorganization, which was confirmed by this court on November 24, 1986, the Unimet Asset Disposition Trust was created with Lee J. DiCola, being appointed

during the period of coverage, but as of the date the insurance policies were canceled, such benefits included basic life insurance, accidental death, dental, prescription drugs, and major medical insurance.

On August 14, 1984, the Cordex division was sold to Burcliff Industries. As part of the sale, a provision in the sales contract between Unimet and Burcliff Industries called for the employees of Cordex to continue on the Unimet plan for an additional thirty (30) day period.

On March 8, 1985, Unimet, Esmet and Intech filed for relief under Chapter 11 of Title 11 of United States Code. On June 27, 1985, Metropolitan filed a proof of claim against Unimet in the amount $1,552,603.33 for liabilities arising under the group policies issued by Metropolitan to Unimet. This claim was asserted as a general unsecured claim in the amount of $787,609.55 and a priority claim under 11 U.S.C. § 507(a)(4) for $764,993.78.

Intech's Chapter 11 bankruptcy was dismissed on June 13, 1986. On November 24, 1986, a Joint Plan of Reorganization was confirmed for Unimet and Esmet with the Unimet Assets Disposition Trust being created. Subsequently, on March 18, 1987, Metropolitan filed an amended proof of claim in the amount of $1,940,368.69 which included a priority claim under Section 507(a)(4) in the amount of $957,583.14.

As of 180 days before the filing of bankruptcy, 316 active employees were covered under the Unimet plan. Employment by company was as follows:

| | | |
|---|---|---|
| 1. | Unimet employees | 15 |
| 2. | Esmet employees | 36 |
| 3. | Intech employees | 129 |
| 4. | Cordex employees | 136 |
| | Total | 316 |

## DISCUSSION

11 U.S.C. Section 507(a)(4) provides for the priority treatment of a claim for contributions to an employee benefit plan. It states:

Trustee. Mr. DiCola, having sole and complete control over the Trust assets, is vested with the power to pursue objections to claims including the objection to Metropolitan's claim.

(a) The following expenses and claims have priority in the following order:

.    .    .    .    .

(4) Fourth, allowed unsecured claims for contributions to an employee benefit plan—

(A) arising from services rendered within 180 days before the date of the filing of the petition or the date of the cessation of the debtor's business, whichever occurs first; but only

(B) for each such plan, to the extent of—

(i) the number of employees covered by each such plan multiplied by $2,000; less

(ii) the aggregate amount paid to such employees under paragraph (3) of this subsection, plus the aggregate amount paid by the estate on behalf of such employees to any other employee benefit plan.

The issue before the court, which appears to be one of first impression, is the determination of the number of eligible employees to be included in the priority pool created by Section 507(a)(4)(B)(i), *supra*. The Trustee does not dispute that the Unimet and Esmet employees, a total of 51, are includable. The Trustee, however, does dispute the inclusion of the Cordex and Intech employees, asserting that they were not, within 180 days prior to the filing of the bankruptcy petition, employees of the debtor, did not render services to the debtor, and thus do not qualify for inclusion.

Metropolitan, citing the Code provisions and equitable considerations, argues that all the employees covered by the benefit plan should be included in determining the amount of the priority claim.

In determining which employees are to be included, the court is guided by the provisions of Section 507(a)(3). Under the former Bankruptcy Act, unpaid wages were entitled to a second priority. *See,* Bankruptcy Act § 64(a)(2); 11 U.S.C. § 104(a)(2), (1970). When the Bankruptcy Reform Act of 1978 was enacted, former Section 64(a)(2) was changed. One of the changes was the creation of a new priority

section for contributions to employee benefit plans. As the legislative history states:

[T]he bill establishes a new category, a fourth priority immediately following the wage priority, for contributions and payments to employee benefit plans. This will include health insurance programs, life insurance plans, pension funds, and all other forms of employee compensation that is not in the form of wages. The priority is limited to the unused amount of the wage priority, but contributions during the full year preceding bankruptcy are given priority. The bill makes a third change by having measurement of the priority date from the date of bankruptcy or from the cessation of the debtor's business, whichever occurs first. This will provide additional protection to the employees of a bankrupt enterprise.

H.R.Rep. No. 595, 95th Cong., 1st Sess. 187–188 (1977), U.S.Code Cong. & Admin. News 1978, pp. 5787, 6148.

As can be seen from the legislative history, the priority treatment given to contributions to employee benefit plans is directly tied to the wage priority of Section 507(a)(3).

For a party to be entitled to priority treatment for wages, there must be an employer-employee relationship between the debtor and the party claiming the priority. *In re Dahlman Truck Lines, Inc.,* 59 B.R. 218 (Bankr.W.D.Wis.1986). A similar relationship seems an appropriate prerequisite for Section 507(a)(4) priority.

Additional support for this analysis can be found in the legislative purpose for the inclusion of Section 507(a)(4) in the Bankruptcy Reform Act of 1978. It was included, we are told, to specifically overrule the body of cases which had previously narrowly construed wage priority to exclude health benefit contributions. *See,* Sen.Rep. No. 989, 95th Congress, 2nd Sess. 69 (1978). In that priority statutes are to be given strict construction, *See, In re Pittston Stevedoring Corp.* 40 B.R. 424 (Bankr.S.D.N.Y.1984), Section 507(a)(4) should not be broadened beyond the limitations imposed

in Section 507(a)(3) when the legislative intent is clear that Section 507(a)(4) was only enacted to cure certain defects in the predecessor to Section 507(a)(3).

Support for this interpretation can also be found in the language of Section 507(a)(4) itself. As previously noted, Section 507(a)(4)(A) provides that the claim is based upon "services rendered within 180 days before the date of the filing of the petition or the date of the cessation of the *debtor's business....*" (Emphasis added).

In the instant proceeding, the only debtors are Unimet and Esmet. Intech's bankruptcy was voluntarily dismissed on June 13, 1986, and Cordex was sold prior to the 180 day period.

Also, Section 507(a)(4)(B)(i) and (ii) limit the amount of the claim to $2,000.00 per employee minus what the employee received under Section 507(a)(3), which requires, as previously noted, an employer-employee relationship. This language again points out the relationship between Sections 507(a)(3) and 507(a)(4) and reinforces the court's finding that a claim for contributions to an employee benefit plan depends upon the existence of an employer-employee relationship between the debtor and the party asserting the priority.

Finally, as the last sentence of the House Report, *supra*, pg. 883, states: "[t]his [Section 507(a)(4) ] will provide additional protection to *the employees of a bankrupt enterprise.*" (Emphasis added).

Accordingly, the court finds that only the employees of Unimet and Esmet, which total 51, are to be included in determining the amount of Metropolitan's priority claim.

An order in accordance herewith shall issue.

## ON MOTION FOR RECONSIDERATION

Metropolitan Life Insurance Company (Metropolitan) seeks the reconsideration of this court's Memorandum of Decision and Order of June 14, 1988, wherein the court determined the number of employees to be included in the calculation of Metropolitan's Section 507(a)(4) priority claim against the debtor to be 51. Metropolitan has set forth four grounds as to why the court should reconsider its prior decision. Metropolitan also requests that an evidentiary hearing be scheduled to consider any factual matters which may be in dispute.

A brief in opposition to Metropolitan's motion has been filed on behalf of Lee J. Dicola, trustee of the Unimet Assets Disposition Trust. Thereafter, Metropolitan filed a reply brief.

## FACTS

The court's prior Memorandum of Decision contained a full statement of the facts as agreed upon by the parties. A summary follows, with such omissions and additions as are deemed necessary.[1]

From November 15, 1979 through February 28, 1985, Metropolitan, through a contract with Unimet Corporation (Unimet), provided employee benefits to employees of Unimet, Esmet, Inc., (Esmet), Intech Systems, Inc. (Intech), both subsidiaries of Unimet, and Cordex, a division of Unimet. (Collectively, the Unimet plan).

On August 14, 1984, the Cordex division was sold, and as part of the sale, a provision in the contract between Unimet and the buyer called for the employees of Cordex to continue under the Unimet plan for an additional thirty (30) day period.

On March 8, 1985, Unimet, Esmet and Intech filed for relief under Chapter 11 of Title 11 of the United States Code. On June 27, 1985, Metropolitan filed a proof of claim against Unimet in the amount of $1,552,603.33 for liabilities arising under the group policies issued by Metropolitan to Unimet. This claim was asserted as a general unsecured claim in the amount of $787,609.55 and a priority claim under 11 U.S.C. § 507(a)(4) for $764,993.78.

Intech's Chapter 11 bankruptcy was dismissed on June 13, 1986. On November 24,

---

**1.** This court's prior Memorandum of Decision and Order arose out of an agreement between the parties to present the threshold issue of the number of employees to be included in the Section 507(a)(4) calculations to the court upon stipulations of fact and briefs.

1986, a Joint Plan of Reorganization was confirmed for Unimet and Esmet with the Unimet Assets Disposition Trust being created. Subsequently, on March 18, 1987, Metropolitan filed an amended proof of claim in the amount of $1,940,368.69 which included a priority claim under Section 507(a)(4) in the amount of $957,583.14.

As of 180 days before the filing of bankruptcy, 316 active employees were covered under the Unimet plan. Employment by company was as follows:

| | | |
|---|---|---|
| 1. | Unimet employees | 15 |
| 2. | Esmet employees | 36 |
| 3. | Intech employees | 129 |
| 4. | Cordex employees | 136 |
| | TOTAL | 316 |

On June 14, 1988, this court issued its Memorandum of Decision wherein it found that only the employees of Unimet and Esmet, a total of 51, were to be included in determining the amount of Metropolitan's priority claim. Thereafter, Metropolitan timely filed a notice of appeal. On appeal, the District Court for the Northern District of Ohio found this court's decision and order to be interlocutory in nature. Therefore, the District Court held it was without jurisdiction and the appeal was dismissed.

Subsequent thereto, Metropolitan filed the instant motion in this court setting forth the following grounds.

1. The Court's interpretation of Section 507(a)(4) failed to implement the Congressional objective to protect workers covered by employee benefit plans;

2. The Court's order failed to recognize that the services performed by employees of the Debtor's subsidiary, Intech Systems, Inc., provided benefit to the Debtor;

3. The Court's order misconstrued the relationship between Sections 507(a)(3) and 507(a)(4) of the Bankruptcy Code; and

4. The appropriate measuring date for purposes of determining priority under Section 507(a)(4) with respect to claims attributable to employees of the Debtor's Cordex division was the date of the sale of the division, not the date of the filing of the bankruptcy petition.

As previously noted, Metropolitan also requests an evidentiary hearing be scheduled to consider any factual matters that remain in dispute.

## DISCUSSION

In view of the fact that its prior Memorandum of Decision and Order was interlocutory, the court has the discretion to reconsider its prior decision. "[U]ntil entry of judgment, [interlocutory orders] remain subject to change at any time. The doctrine of the law of the case does not limit the power of the court in this respect." 1B Moore's Federal Practice para. 0.404[2] at p. 124, 2nd ed. 1988 (citations omitted).

The court, upon review of its prior Memorandum of Decision and the briefs supplied by the parties, finds, however, no compelling grounds to alter its previous holding. Accordingly, Metropolitan's motion will be denied for the reasons set forth below.

### A.

In its prior Memorandum of Decision, the court noted that the issue of the number of eligible employees to be included in the priority pool created by Section 507(a)(4)(B)(i) appeared to be one of first impression. Accordingly, the court did not reach its decision lightly, but undertook an extensive review of the prior Bankruptcy Act, the legislative history underlying Section 507(a)(4), the statute itself and its relation to the other priority provisions of Section 507.

Metropolitan first argues that the court failed to implement Congressional objectives underlying enactment of Section 507(a)(4). The argument is without merit. As previously noted, this court undertook a review of the legislative history behind Section 507(a)(4) and found that an employer-employee relationship is required. Metropolitan, beyond asserting that the court failed to implement Congressional objectives, has suggested nothing which would justify altering the prior finding.

Secondly, Metropolitan argues that the court failed to recognize the benefits provided to Unimet by the Intech employees. The court finds, however, that Metropolitan's argument is not supported by the Bankruptcy Code or the legislative history. Priority statutes are to be given strict construction. *In re Pittston Stevedoring Corporation,* 40 B.R. 424 (Bankr.S.D.N.Y. 1984). Section 507(a)(4) and its legislative history are devoid of any language that could be construed as granting a priority to a party who bestows a "benefit." Instead, Section 507(a)(4) clearly points to the requirement of an employer-employee relationship.

Finally, Metropolitan asserts the court misconstrued the relationship between Section 507(a)(3) and 507(a)(4). The purpose of Section 507(a)(4) was to specifically overrule the body of case law which had previously narrowly construed the wage priority to exclude health benefit contributions. *See,* Sen.Rep. No. 989, 95th Cong.2d Sess. 69 (1978). The very purpose of Section 507(a)(4) ties it to Section 507(a)(3). Therefore, the court finds the employer-employee requirement of Section 507(a)(3) is also applicable to Section 507(a)(4).

### B.

The final ground asserted by Metropolitan as a basis for reconsideration is that the appropriate measuring date under Section 507(a)(4) for the employees of the Cordex division is the date of sale, not the filing date of the bankruptcy petition. This argument was not raised by Metropolitan in the prior proceedings before this court and the trustee strenuously objects to it being raised at this juncture.

Under Rule 56(a) and (d) and Rule 42(b), the district court exercises a broad authority to dispose of cases in stages. These decisions are interlocutory in character and until entry of judgment, they remain subject to change at any time. The doctrine of the law of the case does not limit the power of the court in this respect. Yet the very purpose of deciding some issues ahead of others is to aid in the logical and orderly disposition of the whole. It would be utterly destructive of this end if each successive decision resulted in the reconsideration of every previous one, and a sequence of decisions in the case based on different views overlapping issues of law would likely result in an internally inconsistent judgment. To avoid the horns of this dilemma, it is the practice to treat each successive decision as establishing the law of the case and depart from it only for convincing reasons.

1B Moore's Federal Practice para. 0.404[2] at p. 124–125, 2d ed.1988 (citations omitted).

The court finds no convincing reason to permit Metropolitan to advance now its new theory as to its entitlement to a priority claim for contributions to an employee benefit plan.

As previously noted, this court's prior decision was based upon agreed stipulations of fact and briefs submitted by the parties. Nowhere in the stipulations of fact or in Metropolitan's initial brief is there any mention of the cessation of business argument it now advances. Metropolitan even had the opportunity to, and did, in fact, file a reply brief in the prior proceeding where again, no mention of the cessation of business argument can be found.

Metropolitan has been represented by counsel throughout these entire proceedings. The facts that could possibly support its new theory have always been present. It would be inequitable to allow Metropolitan to raise a new theory of recovery after the trustee and the court relied upon the earlier agreement of the parties to proceed upon stipulations of fact and briefs.

Accordingly, the court finds no compelling reasons to alter its prior holding nor to schedule a hearing to address any additional facts relating to the cessation of business argument of Metropolitan.

An order in accordance herewith shall issue.