**In re CRAFTS PRECISION INDUSTRIES, INC., Debtor.**

**Crafts Precision Industries, Inc., Plaintiff–Appellant and Appellee,**

**v.**

**U.S. Healthcare, Inc., Defendant– Appellee and Appellant.**

**BAP Nos. MB 99–015, MB 99–016.**

United States Bankruptcy Appellate Panel of the First Circuit.

Feb. 9, 2000.

James E. Howard, Boston MA, for appellant and appellee Crafts Precision Industries, Inc.

David C. Fixler, Rubin and Rudman L.L.P., Boston, MA, for appellee and appellant U.S. Healthcare, Inc.

Before LAMOUTTE, VAUGHN and CARLO, U.S. Bankruptcy Judges.

PER CURIAM.

Crafts Precision Industries, Inc. ("Crafts") and U.S. Healthcare, Inc. ("USH") both challenge an Order issued by the United States Bankruptcy Court granting, in part, a motion for summary judgment filed by USH. Crafts argues that the court erred in concluding that vacation pay, accrued more than 90 days before the date of the filing of the debtor's petition in bankruptcy, should not be considered a priority under 11 U.S.C. § 507(a)(4). USH argues that the court erred in concluding that retired employees are not included within the meaning of the phrase "number of employees covered" found in § 507(a)(4). These two matters have been consolidated for the purposes of this opinion, and, finding no error, we affirm the bankruptcy court's Order.

### JURISDICTION

The Bankruptcy Appellate Panel has jurisdiction to review final decisions from the United States Bankruptcy Court pursuant to 28 U.S.C. § 158(b)(1). *See Sanford Inst. for Savings v. Gallo*, 156 F.3d 71, 74 (1st Cir.1998). The bankruptcy court's legal conclusions are reviewed de novo. *Palmacci v. Umpierrez*, 121 F.3d 781, 785 (1st Cir.1997).

### BACKGROUND

Crafts filed a voluntary petition for relief under Chapter 11 on June 20, 1995. With its petition, Crafts filed an emergency motion seeking authority to pay prepetition wage related claims. The motion requested permission to pay sums within the scope of § 507(a)(3), as well as approximately $132,000 in vacation payments which did not qualify under 11 U.S.C. § 507(a)(3). The Court authorized most of

the wages and benefits, but only allowed the debtor to pay prepetition vacation claims that qualified as a priority under 11 U.S.C. § 507(a)(3). The court scheduled a further hearing to determine whether to allow the debtor's request to pay vacation pay that accrued more than 90 days before the date of the filing of the debtor's petition in bankruptcy.

Crafts argued that there was substantial risk that employees would leave Crafts if the entire amount of accrued vacation pay was not paid to employees. Crafts requested that the court exercise its inherent equitable powers under 11 U.S.C. § 105, to authorize the payment of all vacation accrued as of the date of the filing of the petition. After a hearing held on July 12, 1995, the court approved Crafts' request to make the vacation payments. Crafts paid full vacation benefits to employees as they took their vacations post-petition.

On June 20, 1997, after the confirmation of the debtor's Chapter 11 plan, Crafts filed an adversary proceeding against USH, pursuant to 11 U.S.C. §§ 547 and 550, seeking the recovery of $33,725.70 in alleged preferential prepetition payments of premiums from the debtor to USH.[1] USH filed a motion for summary judgment on June 10, 1998, arguing that if it were required to return the payments, USH would have a priority claim under 11 U.S.C. § 507(a)(4). Crafts' plan of reorganization provided for payment of such priority claims in full. Thus, USH argued that since it would be entitled to full payment of its priority claim, this was a complete defense to the preference action. Crafts agreed to dismiss the adversary if it were determined that USH's claim would be a priority claim.

Crafts opposed the motion for summary judgment, contending that USH would not have a priority claim under 11 U.S.C. § 507(a)(4) because certain payments made by the debtor for vacation payments, which did not qualify as a priority claim under § 507(a)(3), qualified as a priority claim under 11 U.S.C. § 507(a)(4) as contributions to an employee benefit plan. The vacation payments that Crafts sought to include within 11 U.S.C. § 507(a)(4) included payments for vacation time accrued more than 90 days before the date of the filing of the petition, but within 180 days before the filing. Crafts argued that after its payments under 11 U.S.C. § 507(a)(4) were considered, the cap amount of $4,000[2] imposed by 11 U.S.C. § 507(a)(4)(B) would be met, precluding the USH claim.

Pursuant to an order dated December 1, 1998, the bankruptcy court concluded that the vacation payments that the debtor sought to include within 11 U.S.C. § 507(a)(4) were not entitled to priority under 11 U.S.C. § 507(a)(4) since they did not constitute a "contribution to an employee benefit plan." Thus, the Court granted USH's motion for summary judgment as to the vacation payments. Crafts filed a motion for reconsideration, which the bankruptcy court denied on January 28, 1999. Crafts filed a timely notice of appeal.

Crafts also opposed USH's motion for summary judgment on the grounds that USH would not have a priority claim under 11 U.S.C. § 507(a)(4), or that it would be significantly reduced, since in determining the cap amounts under 11 U.S.C. § 507(a)(4)(B), USH's calculations are based on a definition of the "number of employees covered" by the USH plan which includes retired employees.[3] Crafts

1. The prepetition payments by Crafts to USH were made pursuant to a contract whereby USH provided health insurance benefits to certain Crafts' employees, including retired employees, in exchange for the payment of premiums.

2. The current amount is $4,300, but the amount was $4,000 at the time of the transactions which are subject of this case.

3. The retired employees paid the $39 per month premium to Crafts to maintain certain coverage under the USH policy. Crafts collected these payments and included them in

argued that in determining the "number of employees covered," for purposes of 11 U.S.C. § 507(a)(4)(B), only active employees should be included.

Pursuant to an order dated December 1, 1998, the bankruptcy court concluded that the language used in § 507(a)(4)(B)(i), referring to "the number of employees covered by each such plan" did not include retired employees. Thus, the Court denied USH's motion for summary judgment as to the determination of the number of employees covered under the plan. USH filed a timely notice of appeal on February 8, 1999.

### DISCUSSION

#### A. *Vacation Pay*

The Bankruptcy Code provides that:

(a) The following expenses and claims have priority in the following order:

. . .

(3) Third, allowed unsecured claims but only to the extent of $4,300 for each individual or corporation, as the case may be, earned within 90 days before the date of the filing of the petition or the date of the cessation of the debtor's business, whichever occurs first, for—

(A) wages, salaries, or commissions, including vacation, severance, and sick leave pay earned by an individual;

. . .

(4) Fourth, allowed unsecured claims for contributions to an employee benefit plan—

(A) arising from services rendered within 180 days before the date of the filing of the petition or the date of the cessation of the debtor's business, whichever occurs first; but only

(B) for each such plan, to the extent of—

(i) the number of employees covered by each such plan multiplied by $4,300; less

(ii) the aggregate amount paid to such employees under paragraph (3) of this subsection, plus the aggregate amount paid by the estate on behalf of such employees to any other employee benefit plan.

11 U.S.C.A. § 507(a) (1994).[4]

Sections 507(a)(3) and 507(a)(4) govern the priority of claims relating to employee wages and benefits. Claims for wages and salaries, "including vacation, severance, and sick leave pay" are entitled to priority if earned within 90 days prior to the date of the filing of the petition in bankruptcy, but only to the extent of $4,300 for each individual. 11 U.S.C.A. § 507(a)(3) (1994). Claims for "contributions" to an "employee benefit plan" are entitled to priority, behind the priority of § 507(a)(3), to the extent that the claims arise from services rendered within 180 days prior to the filing of the petition. 11 U.S.C.A. § 507(a)(4) (1994). The maximum amount that may qualify for the § 507(a)(4) priority is limited to the number of employees covered by the employee benefit plan multiplied by $4,300 and reduced by the amount paid to such employees under § 507(a)(3) and by the amount paid on behalf of such employees to any other employee benefit plan.

The bankruptcy court ruled that vacation pay should not be considered a contribution to an employee benefit plan and therefore cannot be considered a priority under 11 U.S.C. § 507(a)(4). Relying on *In re Saco Local Dev. Corp.*, 711 F.2d 441 (1st Cir.1983) ("*Saco* "), the bankruptcy court reasoned that to constitute a contribution to an employee benefit plan, the debtor was required to present evidence that the debtor's employees accepted lower

---

the premium checks which Crafts sent to USH. Crafts did not make contributions to the USH plan for the retired employees.

4. The parties agree that the cap amount existing when the debtor filed bankruptcy was $4,000.

wages in exchange for vacation pay. The court found that there was no evidence of this in the record.

Crafts argues that the bankruptcy court misinterpreted the First Circuit's holding in *Saco;* that vacation payments are contributions to an employee benefit plan within the meaning of § 507(a)(4); and that even if vacation payments are not contributions to an employee benefit plan, they should be considered for purposes of the cap established by 11 U.S.C. § 507(a)(4)(B).

In *Saco,* the First Circuit held that an insurer's claim for earned health, life, and disability insurance premiums due it from the debtor at the time of the filing of the bankruptcy petition were entitled to priority under 11 U.S.C. § 507(a)(4) as contributions to an employee benefit plan. While the insurance plan was noncontributory, the Court found that "the record contained testimony that the plan resulted in a de facto 'bargain' in which employees accepted lower wages than other firms paid in return for a noncontributory plan." *Saco,* 711 F.2d at 448. Nonetheless, the Court indicated that it found no merit in the argument that employees must have substituted the fringe benefits for wages. The Court stated that the "bargain" or substitution of fringe benefits for wages could "normally be assumed, unless the employer is a philanthropist." *Id.* at 449.

■ Pursuant to the First Circuit's pronouncement in *Saco,* we conclude that Crafts was not required to produce evidence that the employees substituted a fringe benefit for wages in order to obtain a priority under 11 U.S.C. § 507(a)(4). We conclude, however, that the bankruptcy court in this case reached the proper result because we find that vacation pay should be considered as a wage and is not properly classified as a fringe benefit nor as a contribution to an employee benefit plan within the meaning of § 507(a)(4).

Prior to enacting § 507, in § 104(a)(2) (repealed 1978), Congress specifically created a priority for wages. In the 1978 Act, Congress promulgated § 507 and provided separate priorities for "wages, salaries, or commissions, including vacation, severance, and sick leave pay" and "claims for contributions to an employee benefit plan." [5] In reference to § 507(a)(4), Congress stated that:

> In recognition of changes since 1926, the bill ... establishes a new category, a fourth priority immediately following the wage priority, for contributions and payments to employee benefit plans. This will include health insurance programs, life insurance plans, pension funds, and **all other forms of employee compensation that is not in the form of wages.**

H.R.Rep. No. 95–595, at 187 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5963 (footnotes omitted) (emphasis added). *See also* S.Rep. No. 95–989, at 69 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5855. In examining the legislative history of § 507(a)(4), the First Circuit in *Saco* stated that "Congress' object in enacting § 507(a)(4) was to extend the 1898 Act's wage priority to new forms of compensation, such as insurance and other fringe benefits." *Saco,* 711 F.2d at 449.

By specifically including vacation with other types of monetary compensation, we conclude that Congress intended for vacation pay to be treated as a type of wage. We also conclude that Congress intended to create a new priority in § 507(a)(4) for compensation that is not in the form of wages. We conclude that vacation pay

---

**5.** The parties make arguments regarding whether vacation benefits constitute an "employee benefit plan" under the regulations issued pursuant to the Employee Income Security Act of 1974, 29 U.S.C. § 1001 et seq. ("ERISA"). We conclude that the regulations and definitions under ERISA are irrelevant as to whether vacation payments may constitute an employee benefit plan under the Bankruptcy Code. *See In re Southern Star Foods, Inc.,* 144 F.3d 712 (10th Cir.1998); *In re HLM Corp.,* 62 F.3d 224 (8th Cir.1995). We therefore decline to discuss the ERISA definitions.

was not a new form of compensation for which Congress created a priority when it enacted § 507(a)(4). Thus, we conclude that vacation pay earned more than 90 days prior to the date of the filing of the petition in bankruptcy does not qualify as a § 507(a)(4) priority.

■■■ Crafts final argument is that even if the vacation payments are not deemed to be contributions to an employee benefit plan they should nonetheless be taken into account for purposes of determining the cap under § 507(a)(4)(B) since the payments were actually made by Crafts with the bankruptcy court's authorization. This panel concludes that the fact that the bankruptcy court authorized the vacation payments is not pertinent to whether the payments qualified as a priority under § 507(a)(4). The payments were not allowed because they were considered a priority. To the contrary, the payments were approved pursuant to § 105, irrespective of them being non-priority obligations, because Crafts argued that there was substantial risk that employees would leave Crafts if the entire amount of accrued vacation pay was not paid. Although the payments did not comply with § 507's priority scheme, by allowing the payments, the bankruptcy court preserved Crafts' potential for rehabilitation. This panel concludes that because the vacation payments, which were earned more than 90 days before Crafts petition in bankruptcy, do not qualify under § 507(a)(4), they should not be considered in determining the cap under § 507(a)(4)(B).[6]

### B. *Employees Covered*

■■■ USH argues that the bankruptcy court's conclusion that retired employees are not included within the meaning of the phrase "number of employees covered" found in § 507(a)(4)(B)(i), was in error and should be reversed. To briefly reiterate the facts underlying this argument, shortly after filing its petition, the debtor employed thirty-five people at its Canton facility and paid insurance premiums to USH on behalf of them. However, included with its monthly payments to USH were certain $39 checks written by fifteen retired employees. The debtor collected and included these checks with its monthly payments. The debtor argues that these 15 retired employees are not "employees covered" under § 507(a)(4).

The panel rejects the arguments of USH and affirms the decision of the bankruptcy court that retired employees are not included within the meaning of the phrase, "number of employees covered" found in § 507(a)(4)(B)(i).

First and foremost, the panel is convinced that Congress did not intend to increase the overall priority for employment related claims when it adopted § 507(a)(4). This is evident by its adoption of § 507(a)(4)(B)(ii), which deducts from the § 507(a)(4) priority amounts paid under § 507(a)(3). It is clear that the contributions under employee benefit plans are not included in § 507(a)(3) or there would not have been a need for § 507(a)(4). As stated by Collier on Bankruptcy, because the amount payable to employee benefit plans under the

6. Crafts relies on *In re Braniff,* 218 B.R. 628 (Bankr.M.D.Fla.1998) for the proposition that the bankruptcy court's approval of the vacation payments necessitates a conclusion that the payments must be considered for purposes of determining the cap. In *Braniff,* however, the court concluded that the wages which were paid in the beginning of the case were subject to the priority of § 507(a)(3). *Id.* at 633. Thus, the court concluded that although authorization to pay the wages was made in the early days of the case, they should be included in the cap. The court later concluded that payments made to a benefit plan for health insurance coverage, whether or not they qualified for priority status under § 507(a)(4), should be considered in determining the cap under § 507(a)(4)(B). *Id.* at 634. The present case is distinguishable in that the payments which Crafts seeks to include within the cap do not fit within any of the priority sections. Moreover, the payments at issue in this case are vacation payments, which the Bankruptcy Code treats as wages rather than as a benefit plan.

fourth priority is reduced dollar for dollar by the amount of payments to covered employees under the third priority for wages, the overall priority granted to employment related claims is not increased by the addition of § 507(a)(4). *4 Collier on Bankruptcy,* ¶ 507.06 (15th. Ed.1998). Including retired employees as employees under § 507(a)(4) would, in every case where contributions are being made on behalf of retired employees, increase the overall amount of employment related priority claims. In fact, there would have to be a § 507(a)(4) claim in every such case since the payments covered by § 507(a)(3) do not pertain to retired employees. The only logical reading is that the employees counted in the § 507(a)(4) cap are the same employees entitled to benefits under § 507(a)(3).

Second, the panel believes that retired persons are not included in the ordinary meaning of the word "employee." Black's defines "employee" as, "a person who works in the service of another person (the employer) under an expressed or implied contract of hire under which the employer has the right to control the details of work performance." *Black's Law Dictionary* 543 (7th Ed.1999). The Supreme Court addressed the meaning of "employee" in *Allied Chem. and Alkali Workers of AM. v. Pittsburgh Plate Glass Co. Chem. Div.,* 404 U.S. 157, 92 S.Ct. 383, 30 L.Ed.2d 341 (1971), a case brought under the National Labor Relations Act. There, the Court stated that the "ordinary meaning of 'employee' does not include retired workers: retired workers have ceased to work for another for hire" *Id.* at 168, 92 S.Ct. 383.

Indeed, the panel has not been able to find case law either in this circuit or any other that directly addresses this issue. The appellant, in its reply brief raises the case *Allegheny Int'l, Inc. v. Metropolitan Life Ins. Co. (In re Allegheny Int'l, Inc.),* 138 B.R. 171 (Bankr.W.D.Pa.1992), *aff'd, Allegheny Int'l, Inc. v. Metropolitan Life Insurance Co.,* 145 B.R. 820 (W.D.Pa.1992) and correctly states that the district court

affirmed the bankruptcy court's decision allowing certain premiums for retiree life insurance and fees charged for servicing the medical benefit plans for retirees. However, neither the district court nor the bankruptcy court actually addressed the issue before this panel and there is no way to discern from either opinion whether retired employees were counted in the § 507(a)(4) cap period.

Further, Congress has shown that it can distinguish between the ordinary use of the term "employee" and "retired employees" when it chooses to do so. Section 1114 of the Bankruptcy Code was added in 1998 by virtue of the Retiree Benefits Bankruptcy Protection Act of 1988. Pub.L. No. 100–334 (1988). The legislative history of the Act clearly reveals that the statute is intended to benefit retirees specifically. During debate on the bill in the House of Representatives, Rep. Edwards stated that the legislation was "designed to protect the health, life and disability benefits of *retirees* when companies file Chapter 11 bankruptcy." 134 Cong.Rec. H3486 (daily ed. May 23, 1988) (emphasis added). On the Senate side, Senator Metzenbaum declared that the legislation "protects *retiree* health and life insurance benefits when companies go into bankruptcy." 134 Cong.Rec. S6823 (daily ed. May 26, 1988) (emphasis added). These statements, together with the language of § 1114, which identifies retired employees as the beneficiary of the provision, clearly indicate that Congress can and does distinguish between employees and retirees in the bankruptcy code. Sec. 507 of the bankruptcy code was most recently amended in 1994. Had it chosen to do so, Congress could have included retired employees under § 507(a)(4). Its decision not to do so indicates an intent not to include retirees for the purpose of the provision.

### CONCLUSION

The bankruptcy court correctly concluded that payment of vacation pay, which

accrued more than 90 days before the date of the filing of the debtor's petition in bankruptcy, did not qualify as a priority under 11 U.S.C. § 507(a)(4). Also, the bankruptcy court correctly concluded that retired employees are not included within the definition of the "number of employees covered by each such plan" for purposes of 11 U.S.C. § 507(a)(4)(B)(i). Accordingly, we AFFIRM the bankruptcy court's decision. Each party shall bear its own costs.

**SO ORDERED.**