**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

In the Matter of: CONSOLIDATED
FREIGHTWAYS CORPORATION OF
DELAWARE,

                *Debtor,*

CONSOLIDATED FREIGHTWAYS
CORPORATION OF DELAWARE

                *Appellant,*

        v.

AETNA, INC.,

                *Appellee.*

No. 07-56720

D.C. No.
CV-07-00545-JFW

OPINION

Appeal from the United States District Court
for the Central District of California
John F. Walter, District Judge, Presiding

Argued and Submitted
April 13, 2009—Pasadena, California

Filed May 6, 2009

Before: Ferdinand F. Fernandez, Barry G. Silverman, and
Consuelo M. Callahan, Circuit Judges.

Opinion by Judge Fernandez

5285

## COUNSEL

David L. Neale, Levene, Neale, Bender, Rankin & Brill, L.L.P., Los Angeles, California, for the appellant.

Robert S. Gebhard, Sedgwick, Detert, Moran & Arnold, LLP, San Francisco, California, for the appellee.

## OPINION

FERNANDEZ, Circuit Judge:

K. Morgan Enterprises, Inc., Trustee of the Trust of Certain Creditors of Consolidated Freightways Corp. and Certain Affiliates ("Trustee") appeals from a decision of the district court affirming a determination by the bankruptcy court regarding certain claims of priority made by Aetna, Inc. Aetna claimed priority for "claims for contributions to an employee benefit plan." 11 U.S.C. § 507(a)(5).[1] The bankruptcy court agreed with Aetna and accorded priority. We affirm in part, reverse in part, and remand.

## BACKGROUND

Consolidated Freightways Corporation of Delaware and its Affiliates[2] (collectively "CFC") operated a trucking and long-haul freight transportation business. CFC maintained self-funded medical health plans for non-union employees ("the Plans"), and Aetna administered the Plans. When employees or retired former employees or their providers had claims, they submitted the claims to Aetna, which reviewed them, determined if they should be allowed, and reimbursed the claimants when appropriate. Once Aetna issued the reimbursements, it submitted a request for payment to CFC, which, in principle, would then repay Aetna.

Alas, CFC fell on hard times and after ceasing business operations, it terminated its employees and the Plans, and immediately thereafter filed its petition in bankruptcy on September 3, 2002. As of the date of filing, employees and retir-

---

[1] References to section numbers hereafter will be to Title 11 of the United States Code, unless otherwise stated.

[2] The Affiliates are: Consolidated Freightways Corporation; Consolidated Freightways Airfreight Corporation; CFMovesU.com, Inc.; Leland James Service Corporation; and Redwood Systems, Inc.

ees had outstanding claims that had not been reimbursed by Aetna or CFC. Moreover, Aetna itself had not been reimbursed for amounts it had advanced in payment of other employee and retiree claims.

On November 22, 2004, the bankruptcy court issued an "Order Confirming Debtors' Consolidated Plan of Liquidation Dated July 1, 2004 (As Amended)." The Trustee was appointed to administer that trust.

On February 2, 2003, Aetna had filed a proof of claim in an unliquidated amount for fees and costs related to its administration of the Plans, and on April 21, 2003, had amended its claim to fix the claimed amount at $1,498,026. The Trustee conceded that the non-retiree-related portion of Aetna's asserted claims, including Aetna's costs in administering the Plans, was entitled to priority under § 507(a)(5); however, it asserted that the claims relating to retirees were not entitled to priority treatment. The bankruptcy court heard arguments on the Trustee's objection, but ultimately granted priority to the claims regarding Plan contributions for retirees. *See In re Consol. Freightways, Corp. of Del.*, 363 B.R. 110 (Bankr. C.D. Cal. 2007) (*CFC I*). The Trustee appealed to the district court, which affirmed on November 6, 2007. This appeal followed.

## STANDARDS OF REVIEW

We review a "bankruptcy court's decision independently, without deference to the district court." *Zurich Am. Ins. Co. v. Int'l Fibercom, Inc. (In re Int'l Fibercom, Inc.)*, 503 F.3d 933, 940 (9th Cir. 2007). "The bankruptcy court's conclusions of law, including its interpretation of the Bankruptcy Code, are reviewed de novo and its factual findings are reviewed for clear error." *Id.*

## DISCUSSION

[1] This case presents a question of statutory construction. Therefore, we start with the salient provisions of the Bankruptcy Code. Sections 507(a)(4) and (5) read as follows:

(a)   The following expenses and claims have priority in the following order: . . .

(4)   Fourth, allowed unsecured claims, but only to the extent of $4,650[3 ] for each individual or corporation, as the case may be, earned within 180 days before the date of the filing of the petition or the date of the cessation of the debtor's business, whichever occurs first, for —

(A) wages, salaries, or commissions, including vacation, severance, and sick leave pay earned by an individual; or

(B) sales commissions earned by an individual or by a corporation with only 1 employee, acting as an independent contractor in the sale of goods or services for the debtor in the ordinary course of the debtor's business if, and only if, during the 12 months preceding that date, at least 75 percent of the amount that the individual or corporation earned by acting as an independent contractor in the sale of goods or services was earned from the debtor.

(5)   Fifth, allowed unsecured claims for contributions to an employee benefit plan—

(A) arising from services rendered within 180 days before the date of the petition or the date of the cessation of the debtor's business, whichever occurs first; but only

---

[3]This is the amount that applies to this case. It changes regularly due to legislation and § 104; it is now $10,950.

(B) for each such plan, to the extent of —

(i) the number of employees covered by each such plan multiplied by $ 4,650[4]; less

(ii) the aggregate amount paid to such employees under paragraph (4) of this subsection, plus the aggregate amount paid by the estate on behalf of such employees to any other employee benefit plan.

§ 507(a)(4), (5) (2002). Because we must construe § 507(a)(5), our examination must begin with the words of the provision itself. *See Einstein/Noah Bagel Corp. v. Smith (In re BCE West, L.P.)*, 319 F.3d 1166, 1170-71 (9th Cir. 2003) ("Our analysis under the general rules of statutory construction begins with the language of the statute itself.") Of course, that does not mean that we limit ourselves to the provision in perfect isolation. We must, instead, construe that provision with the statutory scheme in which it is embedded. *Id.* at 1170. For example, when language is used in one section of a statute and the same language is used in another section, we can infer that Congress intended the same meaning. *See Sorenson v. Sec'y of the Treasury*, 475 U.S. 851, 860, 106 S. Ct. 1600, 1606, 89 L. Ed. 2d 855 (1986). Similarly, when "Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress act[ed] intentionally and purposely" in so doing. *Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 452, 122 S. Ct. 941, 951, 151 L. Ed. 2d 908 (2002) (internal quotation marks omitted); *see also Tang v. Reno*, 77 F.3d 1194, 1197 (9th Cir. 1996) (stating same principle). In particular, "[s]tatutory construction of the Bankruptcy Code is 'a holistic endeavor' requiring consideration of the entire stat-

---

[4]*Id.*

utory scheme." *BCE West*, 319 F.3d at 1171. When an analysis of a statute using our usual tools of construction leads to a determination that "the statutory language is unambiguous and the statutory scheme is coherent and consistent," we need look no further. *See Barnhart*, 534 U.S. at 450, 122 S. Ct. at 950 (internal quotation marks omitted).

**[2]** With that said, we will look at the section in question. In particular, we will consider if the Plans are "employee benefit plan[s]";[5] what is meant by "contributions";[6] what the scope of "arising from services rendered" is;[7] what is meant by "employees";[8] and, finally, whether the limitation of payments is an aggregate of all that is paid or a limitation per employee.[9] When the provisions of § 507(a)(5) are scrutinized, we think it pellucid that the reference to "employee benefit plans" does, at the very least, encompass the medical plans involved here. *See Howard Delivery Serv., Inc. v. Zurich Am. Ins. Co.*, 547 U.S. 651, 658-59, 126 S. Ct. 2105, 2111, 165 L. Ed. 2d 110 (2006). Moreover, it is plain that the word "contributions" refers to amounts that an employer (here CFC) was required to remit to a plan.

The next question is: For purposes of this priority, what is meant by "employees" and "arising from services rendered"? While at first blush there may be some ambiguity in that regard, we think that a consideration of § 507(a)(5) in the context of the statute renders the answer quite clear.

There was a time when the provisions of current § 507(a)(5)[10]

---

[5] Section 507(a)(5).

[6] *Id.*

[7] Section 507(a)(5)(A).

[8] Section 507(a)(5)(B)(i) & (ii).

[9] Section 507(a)(5)(B)(ii).

[10] Lest there be confusion, we note that all references to the relevant provisions of the Bankruptcy Code use the current numbering. However, an

did not exist, but there was a priority for employee wages provided in § 507(a)(4). Perhaps the concept of "wages" captured enough when that provision was first adopted, but as the economy evolved, many workers began receiving compensation with other, less direct, benefits, such as the medical coverage provided by the Plans. There the 507(a)(5) saga starts. The Supreme Court has given us a description of that start, including its own part in it. *Howard Delivery*, 547 U.S. at 657-60, 126 S. Ct. at 2110-12. It recalled that 507(a)(4), which referred to "wages" and the like, said "nothing of 'employee benefits plans' or anything similar." *Id.* at 658, 126 S. Ct. at 2111. It, therefore, had determined that unpaid contributions to welfare plans that "provided life insurance, weekly sick benefits, hospital and surgical benefits" or annuities were not accorded priority. *Id.* Congress then remedied that by adopting § 507(a)(5). The Court went on to further describe that in the following words:

> Beyond genuine debate, the main office of § 507(a)(5) is to capture portions of employee compensation for services rendered not covered by § 507(a)(4). The current Code's juxtaposition of the wages and employee benefit plan priorities manifests Congress' comprehension that fringe benefits generally complement, or "substitute" for, hourly pay.

> Congress tightened the linkage of (a)(4) and (a)(5) by imposing a combined cap on the two priorities, currently set at $10,000 per employee. Because (a)(4) has a higher priority status, all claims for wages are paid first, up to the $10,000 limit; claims

enactment after this matter commenced changed the numbering system. *See* Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. 109-8, § 212(2), 119 Stat. 51. Pursuant to that, what was then § 507(a)(3) (wages) became (a)(4), and what was previously § 507(a)(4) (employee benefit plan) became (a)(5).

> under (a)(5) for contributions to employee benefit plans can be recovered next up to the remainder of the $10,000 ceiling. No other subsections of § 507 are joined together by a common cap in this way.

*Id.* at 659-60, 126 S. Ct. at 2111-12 (citations and footnote omitted). The fact of that tight connection had not been lost on other courts. *See, e.g.*, *State Ins. Fund v. S. Star Foods, Inc. (In re S. Star Foods, Inc.)*, 144 F.3d 712, 716 (10th Cir. 1998) (noting, as the Court did later, the relationship between the provisions); *In re Unimet Corp.*, 100 B.R. 881, 883-84 (Bankr. N.D. Ohio 1989) (same).

**[3]** Nor is that connection lost on us. Rather, that connection, that relationship, powerfully indicates that what Congress had in mind was employees who had rendered services during the relevant period. They are the ones who would have been earning wages; they are the ones whose wages were, presumably, lower during that same period because funds were supposed to be diverted to payments to the benefit plan.

Were there any remaining doubt about the intended coverage, it is removed by the fact that the maximum to be devoted to priority claims under § 507(a)(5) is determined by the number of employees covered by the plan less the amount paid to those employees pursuant to the § 507(a)(4) priority. *See* § 507(a)(5)(B).

**[4]** Considering, then, the provisions as a whole,[11] and giving similar language similar meaning,[12] we find the intent of Congress and the purpose of the provisions to be far from opaque; rather they are hyaline. In general, the scope of ser-

---

[11]*See United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs.*, 484 U.S. 365, 371, 108 S. Ct. 626, 630, 98 L. Ed. 2d 740 (1988); *see also King v. St. Vincent's Hosp.*, 502 U.S. 215, 221, 112 S. Ct. 570, 574, 116 L. Ed. 2d 578 (1991).

[12]*See Sorenson*, 475 U.S. at 860, 106 S. Ct. at 1606.

vices rendered is those services performed by persons employed by the debtor during the 180-day period preceding bankruptcy. There are, however, a couple of loose ends that we will address briefly.

**[5]** First, much ink has been spilled over whether retired individuals should be included in the word "employees." While we think that normal usage shrinks from that construction,[13] we do not think that it makes much difference here. The operative principle is that the priority is for those who rendered services during the 180-day period, whether they were retired or not at the moment of the filing of the bankruptcy petition.[14] *Cf. Air Line Pilots Assoc., Int'l v. Shugrue (In re Ionosphere Clubs, Inc.)*, 154 B.R. 623, 631-32 (Bankr. S.D.N.Y. 1993) (vacation pay claims are not dependent on whether person retired at time of bankruptcy).

Second, we need not enter the debate over whether a third party plan servicer's claim can be entitled to § 507(a)(5) priority. *Compare In re Braniff, Inc.*, 218 B.R. 628, 631 (Bankr. M.D. Fla. 1998) (insurance company has priority for services rendered to the plan during the relevant period), *with State*

---

[13]*See Allied Chem. & Alkali Workers of Am. v. Pittsburgh Plate Glass Co.*, 404 U.S. 157, 168, 92 S. Ct. 383, 392, 30 L. Ed. 2d 341 (1971) ("The ordinary meaning of 'employee' does not include retired workers; retired employees have ceased to work for another for hire."); *see also Crafts Precision Indus., Inc. v. U.S. Healthcare, Inc. (In re Crafts Precision Indus., Inc.)*, 244 B.R. 178, 184 (B.A.P. 1st Cir. 2000) (per curiam) (same). Moreover, Congress certainly knew how to specifically provide bankruptcy protection for retirees when it so intended. *See, e.g.*, § 1114; *Crafts Precision Indus., Inc.*, 244 B.R. at 184.

[14]Incidentally, if that principle somewhat narrows the class of individuals who can seek this priority, that is not shocking. It accords with the overarching consideration that the scope of priorities should be strictly construed because "preferential treatment of a class of creditors is in order only when clearly authorized by Congress." *Howard Delivery*, 547 U.S. at 655, 126 S. Ct. at 2109; *see also Cal. Self-Insurers' Sec. Fund v. Lorber Indus. of Cal. (In re Lorber Indus. of Cal.)*, 373 B.R. 663, 667-68 (B.A.P. 9th Cir. 2007).

*Ins. Fund v. Mather (In re S. Star Foods, Inc.)*, 210 B.R. 838, 841 (B.A.P. 10th Cir. 1997) (insurance company may not recover for premiums due during the relevant period), *aff'd by State Ins. Fund v. S. Star Foods, Inc., (In re S. Star Foods, Inc.)*, 144 F.3d 712 (10th Cir. 1998). The parties here do not dispute that Aetna can recover; they only dispute the scope of Aetna's claim. Of course, what we have said regarding the coverage of § 507(a)(5) priority will similarly limit Aetna to claims related to those employees who rendered services within the last 180 days of the dying employer.

[6] That leaves the "aggregate" issue for consideration. The Trustee contends that §§ 507(a)(4) and (5) impose a total limit of $4,650 for each individual employee. The bankruptcy court disagreed. *See CFC I*, 363 B.R. at 122-23. We agree with the bankruptcy court. A plain reading of § 507(a)(5) demonstrates that it provides an aggregate limit on recovery under that provision; not an individualized recovery per employee. Had Congress intended it to be individualized, it had the § 507(a)(4) pattern close at hand; there, the limit is "for each individual[.]" However, in writing § 507(a)(5), Congress stated the total amount available for priority claims and then set out the aggregate amount for covered "employees" rather than an amount for each employee. The use of quite different language in that portion of the two provisions bespeaks a different intent. *See Russello v. United States*, 464 U.S. 16, 23, 104 S. Ct. 296, 300, 78 L. Ed. 2d 17 (1983) ("We refrain from concluding here that the differing language in the two subsections has the same meaning in each."); *In re Edgar B, Inc.*, 200 B.R. 119, 123-24 (M.D.N.C. 1996) (using aggregate approach due to language differences between § 507(a)(4) and § 507(a)(5)). The result is, therefore, that an individual employee's claim under § 507(a)(5) will not be limited by the amount that the employee may have recovered under § 507(a)(4). No doubt the overall fund will be limited by the (a)(4) recovery, but individual claims to benefits will not be. Of course, many employees may not have contribution claims to assert at all (for example, for the purpose of the Plans at

hand they may have had no illnesses or expenses), whereas others might have considerable claims. But the aggregate of those claims will simply be limited by the aggregate cap provided by Congress.

## CONCLUSION

**[7]** We disagree with the bankruptcy court's determination that individuals who did not render services within the 180-day period are to be counted in determining the number of employees and are entitled to a priority claim under § 507(a)(5). *See CFC I*, 363 B.R. at 117-22. However, we agree with the bankruptcy court that the recovery cap under § 507(a)(5) is to be treated as an aggregate cap. *See id.* at 122-23.

We, therefore, remand to the bankruptcy court for further proceedings consistent with this opinion.

AFFIRMED    in    part;    REVERSED    in    part;    and REMANDED.

Each party shall bear its own costs on appeal.